IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 15-cv-01412-RPM

SANJUANA D. CARDONA,

  Plaintiff,
v.

FRED COOK, in his official and individual capacity,

  Defendant.

_____

    ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 24)
_____

  In July 2013, Plaintiff Sanjuana Cardona was arrested and charged with violating C.R.S. § 18-8-201, "Aiding Escape," based on an affidavit written by Defendant Fred Cook, the Town Marshal of the town of Log Lane Village, Colorado, a small community near Fort Morgan. In his affidavit, Marshal Cook wrote, among other things, that Plaintiff had admitted providing food and shelter to Enrique Cardona, her ex-brother-in-law, after he escaped from a halfway house and fled law enforcement. The charges against Plaintiff were subsequently dismissed by the prosecutor. Plaintiff alleges the arrest affidavit contained false information and that Marshal Cook was motivated to bring the charges by Plaintiff's expressed dissatisfaction with Marshal Cook's performance as Town Marshal and by her participation as a town trustee in efforts to have him removed from office.

  Plaintiff's Complaint alleges four claims under 42 U.S.C. § 1983: (1) unlawful seizure/false arrest in violation of the Fourth Amendment; (2) malicious prosecution in violation of the Fourth and Fourteenth Amendments; (3) "vindictive prosecution" in violation of the

Fourth and Fourteenth Amendments; and (4) retaliation for free speech in violation of the First Amendment. Plaintiff has abandoned the third claim. Response to Defendant Fred Cook's Motion, Doc. 29 at 43. Marshal Cook moved for summary judgment on the remaining claims.

In December 2012 Enrique Cardona (Enrique) escaped from a halfway house in Sterling and went on two occasions to Log Lane Village, where Ms. Cardona lives. After the first escape in early December, he returned to the halfway house the same day and was not arrested. The second time he evaded law enforcement from December 24 through December 31. During that week, Enrique was considered an escapee and was actively sought by law enforcement. He was arrested by law enforcement on December 31, but not before he kidnapped and assaulted his ex-girlfriend.

At all relevant times, Marshal Cook was the only full-time law enforcement officer employed by Log Lane Village. Sometime during the week of December 24 to 31, while looking for Enrique, Marshal Cook informed Ms. Cardona that Enrique was an escapee. Whether he gave her that information before or after Enrique had come to her home, spent an uncertain amount of time there, and used her telephone to make a call, is disputed.

As part of the investigation for Enrique's prosecution, the Morgan County District Attorney's office instructed Marshal Cook to listen to the recordings of all phone calls Enrique made while in custody at the Morgan County Jail. A system was set up by which Marshal Cook could listen to and download those recordings. In early June 2013 he did that and took notes on what he heard. In one recording Enrique mentioned that during the week of December 24-31, 2012, he had sought shelter and food at Ms. Cardona's home, but said she was not home. Marshal Cook asserts that in another recording Enrique said he had gone to Ms. Cardona's house during the week of December 24, and that she had given him food. Marshal Cook asserts that he

did not properly download this particular recording from the Morgan County Jail's server, and it was automatically deleted. The existence and claimed content of this recording is disputed, based on the fact that Marshal Cook has produced his notes of all phone calls he listened to, and there are no notes of this call. Ms. Cardona asserts that Marshal Cook fabricated the existence of this call to cover up false statements he made in his arrest warrant affidavit. For purposes of argument in the Motion, Defendant assumes this recording never existed.

Allegedly to follow up on what he heard in these recordings, on June 18, 2013, Marshal Cook interviewed Ms. Cardona and her teenage granddaughter to determine if Ms. Cardona had aided Enrique when he was an escapee. The interview was recorded. Concerning Enrique's activities from December 24-31 when he was an escapee, Marshal Cook asked: "[C]an you kind of tell me as best you can what went on during that time?" Ms. Cardona responded: "Yeah, I don't, I don't know when it was, but he did come to my house one time and, um, he stayed there for a few hours and then he left …" She then added that "the next day he came by again at night, thinking, you know, that he could stay, but I told him, 'Rick,' I said, 'You-you can't stay here.'" Ms. Cardona said she was afraid that "[i]f something happens, I don't want my kids in the middle of it."

The "next day" encounter referred to by Ms. Cardona was December 25, 2012, meaning the prior encounter—as discussed in this interview—would have been on December 24, after Enrique had become an escapee. Later in the interview, Marshal Cook asked Ms. Cardona: "But you guys knew that he was running when – when he came down there to your house." Ms. Cardona replied: "I think I knew he was running"; and then immediately followed that statement with: "I don't know if it was when I talked to you or before or after." Thus, Ms. Cardona disputes that she told Marshal Cook in the interview that she knew Enrique was an escapee when

she allowed him into the house on December 24; she asserts that this statement shows she told Marshal Cook in the interview that she did not know if Enrique's first visit was before or after Marshal Cook had told her he was an escapee. Marshal Cook also asked Ms. Cardona and her granddaughter whether either of them had fed Enrique while he was at the house, which both denied, although Ms. Cardona offered that it was possible he came by when nobody was home.

After the interview, Marshal Cook drafted an arrest warrant affidavit for Ms. Cardona alleging a violation of Colorado's Aiding Escape statute, C.R.S. § 18-8-201.[1] An arrest warrant was issued based solely on that affidavit. Ms. Cardona was arrested on July 5, 2013 and bound over on one count of Aiding Escape. She bonded out of jail shortly after her arrest.

Marshal Cook's affidavit falsely stated that during the June 18, 2013 interview, "Sanjuana Cardona said that Enrique Cardona came to her house and wanted food and shelter, she allowed him into the house and gave him food and shelter." The interview transcript shows that Ms. Cardona never said that Enrique came to her house in search of food and shelter or that she gave him "food" or "shelter." The affidavit also falsely states that Ms. Cardona's granddaughter said that she let Enrique "in once to eat and shower." The interview transcript shows no such statement. The affidavit also falsely states that "Sanjuana Cardona said she knew Enrique was on the run at the time he was at the house." The interview transcript, as indicated above, shows that Ms. Cardona said in the interview that she did not know whether she knew Enrique was an escapee when he came to her home the first time.

Marshal Cook's affidavit also falsely states that in a phone call from Enrique to an unidentified female, "Enrique Cardona tells her he was given food and shelter from Sanjuana (Jeanie) Cardona who is the ex-sister-in-law of Enrique Cardona." There is no evidence of any

---

[1] Section 18-8-201(1) provides: "Any person who knowingly aids, abets, or assists another person to escape or attempt to escape from custody or confinement commits the offense of aiding escape."

recorded call containing such a statement. In fact, Enrique made a call in which he specifically told an unidentified female that Ms. Cardona had not provided him with food and shelter, and that he had eaten at her house when Ms. Cardona was not present. Marshal Cook testified that he heard another jail phone call in which Enrique Cardona told an unidentified female that he had received food and shelter from Ms. Cardona. As previously stated there are no notes or recording of such a call and it must be disregarded.

Ms. Cardona subsequently modified her interview statement that Enrique's two visits were on December 24 and 25, 2012, in her response to written discovery. There she wrote that the first visit, when he came by the house and asked to use the phone, was "a week or two prior to Christmas"; and the second was on Christmas night, at which time she states she knew he was a fugitive and told him he could not come in the house.

On January 28, 2014, the charge against Ms. Cardona was dismissed on the motion of the prosecutor who told the court that she believed Ms. Cardona had committed the offense and "admitted to some wrongdoing" but that the prosecutor had concerns about whether there was a reasonable likelihood of conviction.

At all relevant times in 2012 and 2013, Ms. Cardona was a Trustee for Log Lane Village. She asserts that she was critical of Marshal Cook and his performance as a law enforcement officer and that she believes he arrested her in retaliation for her comments. She also alleges that the Log Lane Village Board of Trustees had scheduled a vote in mid-summer 2013, prior to her arrest, regarding Marshal Cook's employment.

Board meeting minutes up through and including July 2013 reveal no discussion or motions concerning terminating Marshal Cook's employment or other discipline. Ms. Cardona acknowledged in her deposition that if the minutes show no one made a motion to terminate or

discipline Marshal Cook, that did not occur; and that the minutes show that no one except another Trustee ever argued with Marshal Cook. She also acknowledged that she and Marshal Cook never argued at a board meeting, and she answered "Correct" when asked whether the minutes show that every conversation she had with him at board meetings was either not a dispute or was actually supportive of him.

Ms. Cardona disputes that these minutes are conclusive. She testified that it was well-known throughout the town that a trustee "voting bloc" she was aligned with wanted to get rid of Marshal Cook, and that Marshal Cook would have known that because everyone knew about the small-town politics at Log Lane Village. Kim Alva, the town clerk, testified she was aware of rumors that Ms. Cardona and others wanted Marshal Cook fired. Marshal Cook acknowledged in deposition testimony that he knew Cardona and others were critical of him, though he denied knowing she wanted him fired.

As of the date of Ms. Cardona's arrest, it was clearly established that falsifying an arrest warrant and arresting a person without probable cause is a violation of the Fourth Amendment. *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004) ("No one could doubt that the prohibition on falsification or omission of evidence, knowingly or with reckless disregard for the truth, was firmly established as of 1986, in the context of information supplied to support a warrant for arrest.").

The evidence supports a finding that Marshal Cook's arrest warrant affidavit contained multiple false statements. Admitting that fact for purposes of summary judgment, Marshal Cook argues that Plaintiff's Fourth Amendment claims still fail because the affidavit, even without the false statements, supports a finding of probable cause for Ms. Cardona's arrest. *See Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996). He bases this argument on Ms. Cardona's

acknowledgement that she knew Enrique was an escapee "during the week of December 24-31" and her interview statement that "I think I knew he was running."

The evidence is conflicting as to when Ms. Cardona learned that Enrique was an escapee—before or after the single time she let him into her house while he was an escapee. This conflicting evidence leaves fact issues regarding both the accuracy of the affidavit and whether, without the false statements, the affidavit established probable cause. Where the evidence "leaves room for a difference of opinion" as to the existence of probable cause for arrest in a civil rights case, the issue is for the jury. *DeLoach v. Bevers*, 922 F.2d 618, 623 (10th Cir. 1990). This rule applies equally to cases in which officers make misrepresentations or omissions in an application for an arrest warrant. *Id.*

The evidence also supports a finding that Marshal Cook's falsified affidavit caused Ms. Cardona's confinement or prosecution for purposes of her malicious prosecution claim. *See Novitsky v. City of Aurora,* 491 F.3d 1244, 1258 (10th Cir. 2007) (reciting elements of malicious prosecution as applicable in a § 1983 action). Ms. Cardona was arrested pursuant to a warrant issued solely on the basis of the admittedly false affidavit. Marshal Cook cannot avoid liability as a matter of law simply based on the argument that Ms. Cardona could or should have taken steps to obtain an earlier termination of prosecution. *See Pierce v. Gilchrist*, 359 F.3d at 1292-93 (officers who conceal and misrepresent material facts to the district attorney are not insulated from § 1983 liability for malicious prosecution merely because the prosecution is pursued independently by the prosecutor, where the misstatements influence the prosecutor's judgment).

The evidence is also sufficient to support a finding of malice. Marshal Cook's affidavit contained false statements that were contradicted by recordings and transcripts of an interview and telephone calls to which Marshal Cook had access. This would permit a jury to find that

Marshal Cook deliberately disregarded evidence in his possession, and to reject any argument of mere negligence.

Defendant argues in his Reply that Plaintiff's malicious prosecution claim cannot stand to the extent it is based on Fourteenth Amendment procedural due process. Plaintiff's Second Claim is based on both the Fourth and Fourteenth Amendments. A Fourth Amendment claim for malicious prosecution may be brought based on the circumstances alleged in this case. *See Myers v. Koopman*, 738 F.3d 1190, 1194-95 (10th Cir. 2013) ("Unreasonable seizures imposed with legal process precipitate Fourth Amendment malicious-prosecution claims."). At the hearing on this matter, Plaintiff agreed to proceed on her Fourth Amendment theory, making it unnecessary to address Defendant's Fourteenth Amendment arguments.

A plaintiff alleging a First Amendment retaliation claim arising out of an arrest must provide competent evidence showing: (1) that she engaged in constitutionally protected speech, (2) that the government's actions caused her injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) that the government's actions were substantially motivated as a response to her constitutionally protected conduct. *Mocek v. City of Albuquerque*, 813 F.3d 912, 930 (10th Cir. 2015). Even viewing the evidence in a light most favorable to Ms. Cardona, she has not identified any protected statements she made, in her capacity as Town Trustee or otherwise, that criticized Marshal Cook's performance or advocated that the Log Lane Village Board of Trustees discontinue his employment. Plaintiff has also failed to present any competent evidence that would support a finding that Marshal Cook knew of any such protected statements and was substantially motivated by them to falsify the affidavit seeking her arrest.

Marshal Cook's qualified immunity argument fails. As discussed above, whether

Marshal Cook had "arguable probable cause" based on an objectively reasonable belief cannot be determined as a matter of law because of the conflicting evidence and differing inferences that can be drawn from it. Marshal Cook's argument concerning the lack of clearly-established law interpreting or applying the Aiding Escape statute also fails because it addresses an argument Plaintiff does not make. There is no argument in this case that Marshal Cook prepared his affidavit and obtained Ms. Cardona's arrest because he misinterpreted or misapplied the statute she was charged with violating. Plaintiff alleges Defendant falsified the facts in his affidavit in order to manufacture a charge. The law is clearly established that such conduct is a Fourth Amendment violation. *Pierce v. Gilchrist*, 359 F.3d at 1298.

Finally, there is no dispute that as sole law enforcement officer of Log Lane Village, Marshal Cook is the official policymaker for purposes of official capacity liability. Given the Court's determination regarding the underlying constitutional claims, summary judgment is also inappropriate on the surviving claims against Marshal Cook in his official capacity.

**Order**

Based on the foregoing, it is

ORDERED that Defendant's Motion for Summary Judgment is DENIED with regard to Plaintiff's First and Second Claims for Relief, provided that the Second Claim is to proceed solely on a Fourth Amendment malicious prosecution theory; and it is

FURTHER ORDERED that Defendant's Motion for Summary Judgment is GRANTED to the Fourth Claim for Relief, which is DISMISSED WITH PREJUDICE; and it is

FURTHER ORDERED that based on Plaintiff's voluntary abandonment of her Third Claim for Relief, the Third Claim is hereby DISMISSED WITH PRELUDICE.

DATED: May 25, 2017

BY THE COURT:

s/Richard P. Matsch

_____
Richard P. Matsch, Senior Judge